## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **BENJAMIN CLARK** | **CIVIL ACTION** |
| **VERSUS** | **NO. 07-2738** |
| **RUSSELL BUTLER, WARDEN** | **SECTION "D"(4)** |

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an Evidentiary Hearing if necessary, and to submit Proposed Findings and Recommendations pursuant to **Title 28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**. Upon review of the entire record, the Court has determined that this matter can be disposed of without an Evidentiary Hearing. *See* 28 U.S.C. § 2254(e)(2).[1]

### I.  Factual Background

The petitioner, Benjamin Clark ("Clark"), is currently incarcerated in the Avoyelles-Marksville Detention Center in Marksville, Louisiana.[2] On October 1, 2002, Clark was charged by Bill of Information in Jefferson Parish with one count of possession with intent to distribute cocaine.[3]

---

[1] Under Title 28 U.S.C. § 2254(e)(2), an Evidentiary Hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2] Rec. Doc. No. 16, 17.

[3] St. Rec. Vol. 1 of 4, Docket Sheet, entry 10/1/02.

The record reflects that Detective Scott Zemlik of the Gretna Police Department was advised by a confidential informant ("C.I.") that a person known as "Shorty" was selling crack cocaine at 1938 O'Connor, Apartment 7.[4]  Officer Zemlik knew Benjamin Clark to be Shorty because of prior encounters.

On September 9, 2002, Zemlik gave the C.I. twenty dollars and sent him to the O'Connor Street residence to attempt a narcotics purchase. The C.I. engaged in a hand-to-hand transaction with an individual at the front door of the house. Zemlik and Sergeant Claude Koenig watched the transaction.

The C.I. returned to Zemlik with one off-white rock which he had purchased from Shorty. Based on this purchase, Zemlik applied for, and obtained, a search warrant for the O'Connor Street apartment. Zemlik and other narcotics officers executed the warrant at about 5:10 a.m. on September 12, 2002. The officers used force to enter the locked gate and front door and announced themselves. They found Benjamin Clark and Ms. Fagan asleep in bed. Clark was not clothed.

The officers secured Clark and Fagan, and handcuffed Clark. Clark asked the officers for a pair of underwear and directed the officers to a dresser drawer. Detective Wayne Williams reached into the drawer and at random pulled out a pair of shorts. A film canister fell from the shorts and onto the floor.

Zemlik picked up the canister and found it contained forty-three off-white rocks, later determined to be crack cocaine. Clark was allowed to dress, and he and Fagan were taken into the front room of the apartment where they were supervised by Sergeant Koenig.

---

[4]The facts of the case were taken from the opinion of the Louisiana Fourth Circuit Court of Appeal on out-of-time appeal. *State v. Clark*, 909 So.2d 1007, 1010-11 (La. App. 5th Cir. 2005); St. Rec. Vol. 4 of 4, 5th Cir. Opinion, 05-KA-61, 6/28/05.

Zemlik continued the search and located a set of two-way personal radios, a plate with off-white residue, and some plastic bags containing off-white residue. Zemlik advised Clark of his Miranda rights. Clark then told Zemlik that Fagan had nothing to do with the cocaine, and asked him to let her stay at the apartment.

Clark and his substance abuse counselor also testified that Clark had successfully reached two years of sobriety. The counselor testified that she was with Clark at a Narcotics Anonymous meeting on the night of September 9, 2002, between 6:30 p.m. until after 9:00 p.m., and that he could not have been home to sell narcotics to the C.I. It was Clark's contention that the officers targeted him for arrest because he had filed a complaint against Zemlik with the police department's Internal Affairs Division. Clark also testified at trial that he was not advised of his rights at his apartment, but later at the police station.

On February 11, 2005, after waiver of trial by jury, Clark was tried before Judge Martha Sassone and found guilty as charged.[5] The Trial Court sentenced Clark on May 11, 2004, to serve 25 years in prison, with the first two years to be without benefit of parole, probation or suspension of sentence. The State filed a multiple bill that same day and later withdrew it on June 15, 2004.[6]

In the meantime, on direct appeal, Clark's appointed counsel raised three grounds for relief:[7] (1) insufficient evidence to convict because the police officers' testimony was in conflict and the evidence did not link him to the cocaine; (2) he was denied the right to confrontation because the Trial Court denied the motion to release the identity of the C.I. and barred questions to Officer Zemlik about

---

[5] *See* St. Rec. Vol. 1 of 4, Trial Transcript (partial copy), p. 127, 2/11/04; Multiple Bill, ¶1, 5/11/04 (indicating trial date as 2/11/04).

[6] St. Rec. Vol. 1 of 4, Multiple Bill (2 pages), 5/11/04.

[7] St. Rec. Vol. 2 of 4, Appeal Brief, 05-KA-61, 2/14/05.

the brutality charge for which he was allegedly fired; and (3) excessive sentence because the Trial Court failed to consider mitigating circumstances required by state law. On June 28, 2005, the Louisiana Fifth Circuit Court of Appeal affirmed Clark's conviction and sentence finding no merit to any of his claims.[8]

Clark sought timely[9] review of the appeal in the Louisiana Supreme Court by Writ Application received by the court on July 22, 2005, and filed August 11, 2005.[10] Clark raised the same three claims in this Writ Application as those raised by his attorney on direct appeal.[11] The Court denied the Application without reasons on March 17, 2006.[12]

Clark's conviction became final 90 days later, June 15, 2006, because he did not file a writ application with the United States Supreme Court. *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under Title 28 U.S.C. § 2244(d)(1)(A)); U.S. S. Ct. Rule 13(1).

---

[8]*State v. Clark*, 909 So.2d at 1007; St. Rec. Vol. 4 of 4, 5th Cir. Opinion, 05-KA-61, 6/28/05. The Court also remanded the matter for the Trial Court to provide Clark with proper notice of post conviction deadlines. The Trial Court complied on July 11, 2005. St. Rec. Vol. 3 of 4, Notice of Prescriptive Period for Post Conviction Relief, 7/11/05.

[9]Pursuant to La. Code Crim. P. art. 922(C) and La. S. Ct. R. X§5, petitioner had 30 days from the issuance of the state appellate court's opinion to file a writ application in the Louisiana Supreme Court. His writ application had no postal meter date. However, his cover letter was dated July 13, 2005, and the clerk of court noted that the document was received on July 22, 2005. *See* St. Rec. Vol. 4 of 4, La. S. Ct. Writ Application, 05-KO-2119, 8/11/05 (no postmark, received 7/22/05); Cover Letter for 05-KO-2119, 7/13/05; La. S. Ct. Letter, 2005-KO-2119, 8/11/05. Both of these dates were within that period. *See Causey v. Cain*, 450 F.3d 601 (5th Cir. 2006).

[10]St. Rec. Vol. 4 of 4, La. S. Ct. Writ Application, 05-KO-2119, 8/11/05 (no postmark, received 7/22/05); Cover Letter for 05-KO-2119, 7/13/05; La. S. Ct. Letter, 2005-KO-2119, 8/11/05.

[11]St. Rec. Vol. 4 of 4, La. S. Ct. Writ Application, 05-KO-2119, 8/11/05.

[12]*State v. Clark*, 925 So.2d 538 (La. 2006); St. Rec. Vol. 4 of 4, La. S. Ct. Order, 2005-KO-2119, 3/17/06.

## II.     **Procedural History**

On May 16, 2006, before his conviction was final, Clark filed an application for post conviction relief in the Trial Court alleging that he was denied effective assistance of counsel on appeal because his counsel failed to challenge the Trial Court's denial of the motion to suppress evidence.[13] The Trial Court denied the application the next day finding no merit to the claim under the standards set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).

On June 6, 2006, Clark timely[14] filed a Writ Application with the Louisiana Fifth Circuit alleging that his 4th Amendment rights were violated by an illegal search and seizure and the Trial Court erred in denying the motion to suppress.[15] Clark did not address the ineffective assistance of appellate counsel claim in this writ application. On June 15, 2006, the Court denied the Writ Application finding no error in the Trial Court's ruling.[16]

Clark thereafter filed a timely Writ Application with the Louisiana Supreme Court alleging two grounds for relief:[17] (1) his 4th Amendment rights were violated by an illegal search and seizure and the Trial Court erred in denying the motion to suppress; and (2) ineffective assistance of counsel on appeal because counsel failed to challenge the Trial Court's denial of the motion to suppress evidence.

While this Writ Application was pending in the Louisiana Supreme Court, Clark filed a Writ Application in the Louisiana Fifth Circuit alleging that the Judge Joan Benge's review of his

---

[13] St. Rec. Vol. 3 of 4, Uniform Application for Psot Conviction Relief, 5/16/06.

[14] Louisiana law provides a 30 day period to file for review of a trial court's ruling with the circuit court of appeal. La. App. Rule 4-3; *see also*, La. Code Crim. P. art. 922.

[15] St. Rec. Vol. 4 of 4, 5th Cir. Writ Application, 06-KH-415, 6/6/06 (postmarked 5/30/06).

[16] St. Rec. Vol. 4 of 4, 5th Cir. Order, 06-KH-415, 6/15/06.

[17] St. Rec. Vol. 4 of 4, La. S. Ct. Writ Application, 06-KH-1677, 6/30/06 (postmarked 6/23/06); La. S. Ct. Letter, 2006-KH-1677, 6/30/06.

5

application for post conviction relief was a conflict of interest, miscarriage of justice, and violation of due process and equal protection.[18] He claimed that Judge Sassone should have been the one to review his application since she sat as the trial judge. On November 9, 2006, the Court denied the Application finding no error in the Trial Court's May 17, 2006, ruling on the post conviction application.[19]

On December 18, 2006, Clark filed with the Louisiana Supreme Court an addendum to his pending Writ Application in which he raised the claims against Judge Benge for conflict of interest, miscarriage of justice, and violation of due process and equal protection raised to the Louisiana Fifth Circuit in Writ Application No. 06-KH-831.[20]

Thereafter, on March 30, 2007, the Louisiana Supreme Court denied Clark's pending Writ Application without reasons.[21] In doing so, the Court noted that Clark was "Applying for Supervisory and/or Remedial Writs, . . . to the Court of Appeal, Fifth Circuit, No. 06-KH-415." The Court made no mention of the addendum or to Louisiana Fifth Circuit Writ Application No. 06-KH-831 in which the issues related to Judge Benge were initially raised.

### III.    Clark's First Federal Habeas Corpus Petition

On July 3, 2006, Clark filed a petition for federal habeas corpus relief, Civ. Action No. 06-3519"C", challenging the same conviction addressed in the instant petition.[22] Clark raised three grounds for relief: (1) the Trial Court's rulings deprived him of the right to put on a defense because

---

[18]St. Rec. Vol. 4 of 4, 5th Cir. Writ Application, 06-KH-831, 11/30/06 (postmarked 10/23/06).

[19]St. Rec. Vol. 4 of 4, 5th Cir. Order, 06-KH-831, 11/9/06.

[20]St. Rec. Vol. 4 of 4, Addendum, 06-KH-1677, 12/18/06.

[21]*State ex rel. Clark v. State*, 953 So.2d 67 (La. 2007); St. Rec. Vol. 4 of 4, La. S. Ct. Order, 2006-KH-1677, 3/30/07.

[22]Civ. Action No. 06-3519"C", Rec. Doc. No. 1.

6

he was not provided with the identity of the C.I. and because he was not allowed to show a pattern of misconduct by the police; (2) the evidence was insufficient to convict; and (3) the sentence was excessive.

The State filed a response in opposition to the petition alleging that Clark's claims were without merit.[23] The State also conceded that the petition was timely filed and that the three claims raised were exhausted through the state court system. The petition is pending before the assigned section of the Court.

### IV.    Clark's Current Federal Petition

On April 9, 2007, Clark filed the instant petition for federal habeas corpus relief in which he alleged the following grounds for relief:[24] (1) ineffective assistance of appellate counsel for failure to challenge the Trial Court's denial of the motion to suppress; (2) violation of the 4th Amendment where (a) evidence from an illegal search and seizure was admitted at trial, (b) the search warrant was issued without probable cause, (c) the Trial Court erred in denying the motion to suppress the evidence, and (d) the bill of information failed to refer to the crime charged; (3) a conflict of interest occurred when Judge Sassone transferred the application for post conviction relief to Judge Benge for ruling, because Judge Benge signed the improper search warrant; (4) a miscarriage of justice occurred because Judge Benge violated due process; and (5) Judge Benge violated his due process rights when she failed to recuse herself from ruling on the application for post conviction relief.

---

[23]Civ. Action No. 06-3519"C", Rec. Doc. No. 7.

[24]Rec. Doc. No. 1.

The State filed a response to Clark's petition alleging that the petition may be dismissed as a prohibited second or successive petition.[25]  Alternatively, the State argues that Clark has failed to properly exhaust state court remedies as to at least four of the claims raised in this petition.  The State, out of an abundance of caution, also contends that the claims raised are without merit.

## V.     **Standards of Review**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[26] applies to Clark's petition, which is deemed filed in this court under the federal mailbox rule on April 12, 2007.[27]  The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim.  *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

In this case, the State has presented two procedural defenses to Clark's petition.  The State first argues that Clark's petition should be barred from federal review as a prohibited second or successive

---

[25]Rec. Doc. No. 15.

[26]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996.  *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)).  The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[27]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se.  Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes.  *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999), *cert. denied*, 529 U.S. 1057 (2000); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995).  The clerk of court filed Clark's federal habeas petition on April 19, 2007, when the filing fee was paid.  Clark dated his signature on the petition on April 12, 2007.  This is the earliest date on which he could have been submitted the pleadings to prison officials for mailing.  The fact that he paid the filing fee on a later date does not alter the application of the federal mailbox rule to his pro se petition.  *See Cousin v. Lensing*, 310 F.3d 843, (5th Cir. 2002) (mailbox rule applies even if inmate has not paid the filing fee at the time of mailing) (citing *Spotville*, 149 F.3d at 374).

petition. Alternatively, the State contends that Clark has failed to exhaust state court remedies with regard to four of his claims.

## VI.     Second or Successive Federal Petition

As outlined above, Clark filed an earlier habeas corpus petition challenging the same conviction and sentence.[28] The petition is pending before the Court and there has been no resolution of the claims raised therein. Before considering the current petition, the court is compelled to consider the State's argument as to whether the current claims in the instant case are presented in a second or successive petition, which would require certification of the claims by the circuit court prior to consideration in this court. 28 U.S.C. § 2244(b)(3).

Title 28 U.S.C. §§ 2244(b)(1) and (2) provide for the dismissal of any new or previously raised claim presented in a second or successive Section 2254 habeas corpus petition. Like other circuits, the United States Fifth Circuit Court of Appeals has recognized that the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, did not define the phrase "second or successive" found in 28 U.S.C. § 2244. For guidance, the United States Fifth Circuit has turned to pre-AEDPA law defining those same terms under Rule 9(b) of the Rules Governing § 2254 Cases:

> Section 2244(b) does not define "second or successive" petition. The specific language in the Act is derived from Rule 9(b), Rules Governing Section 2254 Cases, 28 U.S.C. foll. § 2254, which states that "[a] second or successive petition may be dismissed if . . . it fails to allege a new or different grounds for relief and the prior determination was on the merits or, if new and different grounds are alleged, . . . the failure of the petitioner to assert those grounds in a prior petition constituted an abuse of the writ." Although the AEDPA's amendment to § 2244 imposes stricter requirements for "second or successive" petitions than the pre-AEDPA "abuse of the

---

[28]*Benjamin Clark v. Russell Butler, Warden*, Civ. Action No. 06-3519"C" (E.D. La.).

writ" standard in Rule 9(b), <u>nothing in the AEDPA affects the determination of what constitutes a "second or successive" petition.</u>

*In re Gasery*, 116 F.3d 1051 (5th Cir. 1997) (emphasis added) (citation omitted).

The Fifth Circuit has consistently held that an adjudication <u>on the merits</u> is necessary before a subsequent petition is considered "second or successive." *See Barrientes v. Johnson*, 221 F.3d 741 (5th Cir. 2000) (when prior petition is dismissed without prejudice, subsequent filing is not successive) (citing *Slack v. McDaniel*, 529 U.S. 473 (2000) (subsequent filing not successive when prior filing was dismissed without prejudice)), *cert. dism.*, 531 U.S. 1134 (2001); *Graham v. Johnson*, 168 F.3d 762 (5th Cir. 1999) ("Under current law, however, it is clear that an application <u>filed after a previous application was fully adjudicated on the merits</u> is a second or successive application within the meaning of 28 U.S.C. § 2244(b), even if it contains claims never before raised." (emphasis added)), *cert. denied*, 529 U.S. 1097 (2000). However, the Fifth Circuit also has made clear that under AEDPA, "a prisoner's application is not second or successive simply because it follows an earlier federal petition." *In re Cain*, 137 F.3d 234, 235 (5th Cir. 1998).

Under these guidelines, Clark's instant petition is not a prohibited second or successive petition. The prior petition in Civ. Action 06-3519"C" is still pending resolution before the Court. There has been no adjudication on the merits of the claims raised in that petition. Thus, Clark's instant petition is not a prohibited second or successive petition.

## VII. <u>Exhaustion Requirement</u>

The State alleges that Clark has not properly exhausted state court remedies as to his second, third, fourth and fifth claims raised herein. "A fundamental prerequisite to federal habeas relief under § 2254 is the exhaustion of all claims in state court prior to requesting federal collateral relief."

*Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973); *Whitehead v. Johnson*, 157 F.3d 384, 387 (5th Cir. 1998) (citing *Rose v. Lundy*, 455 U.S. 509, 519-20 (1982)); *Nobles*, 127 F.3d at 419. "A federal habeas petition should be dismissed if state remedies have not been exhausted as to all of the federal court claims." *Whitehead*, 157 F.3d at 387 (citing 28 U.S.C. § 2254(b)(1)(A); *Rose*, 455 U.S. at 519-20).

The well-established test for exhaustion requires that the substance of the federal habeas claim be fairly presented to the highest state court. *Whitehead*, 157 F.3d at 387 (citing *Picard v. Connor*, 404 U.S. 270, 275-78 (1971)). "State prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," including discretionary review when that review is part of the State's ordinary appellate review procedures. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). "A federal court claim must be the 'substantial equivalent' of one presented to the state courts if it is to satisfy the 'fairly presented' requirement." *Whitehead*, 157 F.3d at 387 (citing *Picard*, 404 U.S. at 275-78). "This requirement is not satisfied if the petitioner presents new legal theories or new factual claims in his federal application." *Whitehead*, 157 F.3d at 387 (citing *Nobles*, 127 F.3d at 420); *Wilder v. Cockrell*, 274 F.3d 255, 259 (5th Cir. 2001). For exhaustion purposes, it also is not enough for a petitioner to have raised the claims in the lower state courts if the claims were not specifically presented to the state's highest court. *Baldwin v. Reese*, 541 U.S. 27, 32 (2004). Furthermore, a prisoner does not fairly present a claim to the state's highest court if that court must read beyond the petition or brief, such as a lower court opinion, to find a claim not otherwise specifically raised. *Id.*, at 32.

A review of each of Clark's claims arguably reflects that he has not properly exhausted any of the five claims raised in this petition. His first claim, ineffective assistance of appellate counsel for failure to challenge the denial of the motion to suppress, was clearly raised for the first time in his application for post conviction relief. The claim was denied as meritless by the Trial Court. Clark proceeded to the Louisiana Fifth Circuit to purportedly challenge the Trial Court's ruling. However, according to the record, he raised only one, new claim to the appellate court, alleging that his Fourth Amendment rights were violated. This is his second federal claim, to be addressed *infra*. After denial of relief, Clark proceeded to the Louisiana Supreme Court for review. He raised both claims to that court and was again denied relief.

Thus, Clark raised his first federal claim in the state trial court and in the Louisiana Supreme Court. He did not specifically raise ineffective assistance of counsel to the Louisiana Fifth Circuit. That Court was not required to read beyond his pleadings to seek out the ineffective assistance of counsel claim not specifically raised. *Baldwin*, 541 U.S. at 32. By skipping this step of the review, he has left his ineffective assistance claim in a procedurally deficient posture.

Arguably, the appellate court may have reviewed the ineffective assistance of claim since its denial of relief referenced "no error" in the Trial Court's ruling. That ruling, of course, only dealt with the ineffective assistance of appellate counsel. Nonetheless, the record is clear that Clark did not raise his second claim, addressing fourth amendment violations, to the Trial Court.

This second claim instead was raised for the first time in his first post conviction writ application to Louisiana Fifth Circuit, No. 06-KH-415. Clark again skipped review in the Trial Court. Thus, even though this claim was eventually presented to the Louisiana Supreme Court, Clark failed

to present the claim at each step of the state court system. This claim is therefore not properly exhausted.

Finally, considering Clark's three remaining claims of conflict of interest, miscarriage of justice and denial of due process, the record demonstrates that Clark raised these claims for the first time in his second post conviction writ application to the Louisiana Fifth Circuit, No. 06-KH-831. Clark did not file for review of these claims in the state trial court. Instead, he again skipped that step of the state court review. Eventually, the appellate court denied relief on this second writ application.

Clark then sought to add these three claims to his then-pending Louisiana Supreme Court writ application. While Clark's "Addendum" was received by the Louisiana Supreme Court, it is unclear whether the Court considered the claims. A review of the Court's March 30, 2007, order would tend to suggest that it did not. In denying the writ application, the Court referenced only Clark's first appellate writ application, No. 06-KH-415, in which he raised only the fourth amendment violations. The Court did not refer in its order to a review of the second appellate writ, No. 06-831, from which the "Addendum" claims arose.

According to the record, it appears that Clark has failed to properly exhaust state court remedies as to all of the claims raised in this federal habeas corpus petition. Because Clark took a haphazard approach to presenting his arguments to the state courts, it is arguable that, at best, he has presented this Court with a mixed petition, containing both exhausted and unexhausted claims.

The record discloses no good cause for Clark's failure to properly exhaust and the Court can find none from its review of the record. *Rhines v. Weber*, 544 U.S. 269, 277-78 (2005). Therefore, this petition must be dismissed without prejudice to allow Clark to pursue complete exhaustion. *Pliler v. Ford*, 542 U.S. 225, 233 (2004) (quoting *Rose*, 455 U.S. at 510); *Whitehead*, 157 F.3d at 387.

Furthermore, should Clark desire to withdraw the unexhausted claims or amend his complaint to raise only the arguably exhausted claim, such a request should be denied. As the record shows, Clark already has one pending petition for federal habeas corpus relief in Civ. Action No. 06-3519"C". Should Clark desire to pursue his arguably exhausted claim, he should be required to do so in that previously filed case in the interest of judicial economy and to conserve judicial resources. Alternatively, should the Court allow such an amendment, any claim deemed exhausted should be transferred for possible consolidation with the petition in Civ. Action No. 06-3519"C" pursuant to L.R. 3.1.1E.

**VIII.   Recommendation**

For the foregoing reasons, it is **RECOMMENDED** that Benjamin Clark's petition for issuance of a Writ of Habeas Corpus filed pursuant to Title 28 U.S.C. § 2254 be **DISMISSED WITHOUT PREJUDICE** for failure to exhaust state court remedies.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within ten (10) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this \_\_\_26th\_\_\_ day of _____February_____, 2008.

_____
**KAREN WELLS ROBY
UNITED STATES MAGISTRATE JUDGE**